FREW and another, Plaintiffs and Respondents, v. DUPONS CONSTRUCTION COMPANY, INC., and another, Defendants and Respondents: CITY OF KENOSHA, Defendant and Appellant.

*January 5—January 30, 1968.*

678

680

For the defendant-appellant there was a brief and oral argument by *K. Thomas Savage,* city attorney.

For the plaintiffs-respondents there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

For the defendant-respondent Wisconsin Natural Gas Company there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane* of Milwaukee, attorneys, and *Heide, Sheldon, Hartley & Thom* of Kenosha of counsel, and oral argument by *John F. Zimmermann.*

BEILFUSS, J. This case comes before the court on denial of a motion for summary judgment. The standard rules governing inquiry on summary judgment are set forth in *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. 2d 238, 244, 245, 105 N. W. 2d 305:

"As has been said many times by this court, the inquiry on summary judgment is not to decide the questions of fact raised by the affidavits and other proof, but to decide whether such questions exist and should be submitted to the trier of the facts. . . The law applicable to granting or denying summary judgment has been stated many times by this court. In *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 277, 103 N. W. (2d) 9, we stated:

" 'The rule is well established in this state that when it is shown there is a substantial issue of fact, or when the evidence on a material issue is in conflict, or if the inferences to be drawn from credible evidence are doubtful and uncertain, the motion for summary judgment should be denied. Likewise, when there is credible evidence which under any reasonable view will either support or admit of an inference in support or in denial of a claim of either party, it is for the jury to draw the proper inference and not for the court to determine which of two or more permissible inferences should prevail. *Elder v. Sage* (1950), 257 Wis. 214, 42 N. W. (2d) 919. We have often said that the power of the courts under the summary-judgment statute (sec. 270.635, 33 W. S. A., p. 309) is drastic and should be exercised only when it is plain

that there is no substantial issue of fact or of permissible inference from undisputed facts to be tried. *De Bonville v. Travelers Ins. Co.* (1959), 7 Wis. (2d) 255, 96 N. W. (2d) 509, 97 N. W. (2d) 392; *Ondrejka v. Ondrejka* (1958), 4 Wis. (2d) 277, 90 N. W. (2d) 615; *Braun v. Jewett* (1957), 1 Wis. (2d) 531, 85 N. W. (2d) 364; *Udovc v. Ross* (1954), 267 Wis. 182, 64 N. W. (2d) 747, 66 N. W. (2d) 200.' "

The issue presented, therefore, is whether there are any triable issues of fact presented. The issue turns on two questions: (1) Whether the employment relation of Bailey with the city was such that it can be said as a matter of law that Bailey was acting outside the scope of employment at the time of his alleged negligence concerning the explosion; and (2) does sec. 62.15 (11), Stats., insulate the city from liability for the negligence of its employee, Bailey.

It is settled law that a master is liable for the negligent acts of his servant when such acts are within the scope of the servant's employment. *Kruse v. Weigand* (1931), 204 Wis. 195, 235 N. W. 426; *Eckel v. Richter* (1926), 191 Wis. 409, 211 N. W. 158.

"A master is subject to liability for physical harm caused by the negligent conduct of servants within the scope of employment." Restatement, 1 *Agency* (2d), p. 536, sec. 243.

The first question presented is whether Bailey was acting within the scope of his employment at the time of his alleged negligence concerning the explosion incident.

The city urges that Bailey was merely an "inspector" on the job and consequently was acting outside the scope of his employment in the matter. The city bases this contention on the following provision of the contract specifications entered into between the city and Dupons.

"Section 25—Inspection

"No materials of any kind shall be used until they have been examined by the Engineer or some person authorized

by him, who shall have full power to condemn any work or materials not in accordance with these specifications, and to require the Contractor to remove any work or materials so condemned, and at his own expense to replace such condemned work or materials to the satisfaction of the Engineer. The decision of the Engineer shall be final as to quality of workmanship and materials.

### "Section 26—Inspectors

"The city shall appoint an inspector or inspectors whose duty it shall be to inspect all work and materials and to prevent any deviation from these specifications, and the Contractor will not thereby be relieved from his obligations to supervise the work and fulfill to the letter all terms of these specifications. If an inspector should be negligent or absent, or should consent to the allowance of inferior work, the Contractor will not thereby be excused or relieved from repairing or removing faulty work or material at his own expense."

Concededly, these provisions define the inspector's duty. However, this definition does not constitute an express limitation upon the scope of the inspector's authority. Consequently, there is room for argument and evidential presentation that Bailey was given further duties in connection with his job. If such was the case, or if Bailey so acted with the knowledge and acquiescence of the city, his scope of employment may have been greater than that described in the contract provisions above.

From the affidavits before the trial court, questions are raised as to exactly what the scope of Bailey's employment was. There is testimony which indicates it is quite unclear whether Bailey's authority extended further than "inspection." The deposition of James M. Foote, Dupons' foreman on the job, revealed the following:

"*Q.* How did it happen that the sewer lateral was constructed to the Isetts Building if it was not part of the original project? *A.* It was a directive from the City to put it in.
"*Q.* Who from the City directed to put it in? *A.* It came to me from the City Inspector.

"*Q.* Who was that? *A.* Mr. Bailey—Robert Bailey.

" . . .

"*Q.* As I understand your testimony, initially it was Bailey who told you about the requirement to have the lateral go into the Isetts Building? *A.* Yes, my orders came from him.

"*Q.* How did you get that? *A.* Verbally.

"*Q.* No work order? *A.* I never saw any work order.

" . . .

"*Q.* What was your understanding what Bailey's position was with reference to this 55th Street Job? *A.* He was the City Inspector.

"*Q.* What was your then impression of what an inspector was to do concerning that job? *A.* He was to see that everything was installed according to specifications.

"*Q.* By your understanding, did he have any supervisory over above you as to the job? *A.* Yes, being that the City is the owner and he—the City Inspector's word, you might say, is law when you are doing a job or any inspector.

"*Q.* Did he take—did he perform any physical activities insofar as that sewer job was concerned? *A.* No, sir; outside of errands he ran a few errands.

"*Q.* For you? *A.* Yes, he would do that on his own. He was not compelled to do it.

"*Q.* His job, by your understanding, was to see that you and the Dupons Company performed in keeping with the contract and specifications; is that right? *A.* That's correct.

"*Q.* And not beyond that? *A.* No, he didn't have no absolute duties beyond that.

" . . .

"*Q.* And in the course of the period that you had worked with him, he had from time to time given you specific instructions to do certain things incident to Dupons' performance of a particular job? *A.* In a capacity of City Inspector, yes.

"*Q.* And you observed his instructions when he gave you them? *A.* Yes, I did."

Furthermore, it is not entirely clear that the duties of "inspection" exclude a certain amount of supervision or direction. Part of that duty, it seems, might be not only

to inspect, but to see that the job is done right and direct how it is to be done or redone and corrected.

" 'Not every act which an agent or servant may do while he is in the place appointed for the service, or during the time in which he is engaged in the performance, can be deemed to be within the course of the employment, or within the scope of the authority. The test lies deeper than that; it inheres in the relation which the act done bears to the employment. The act cannot be deemed to be within the course of the employment unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated.' " *Seidl v. Knop* (1921), 174 Wis. 397, 400, 182 N. W. 980.

A certain amount of instruction and direction is not necessarily unnatural, disconnected or extraordinary so as to say it was outside the scope of Bailey's employment.

"It is argued that the warehouse employees had no authority from defendant's management to give instructions to the truckers. That does not relieve defendant from responsibility for what they did. There is no evidence that the practice was forbidden. The employees in question were in apparent charge of loading and unloading operations, they checked goods in and out, stamped freight bills, and the like. Truckers would naturally and properly comply with their requests as to such matters as stacking the ramps after use. Thus their acts in the premises were the acts of defendant. *An employer cannot permit its rank-and-file employees to do things habitually in the course of their work that are very natural and reasonably to be anticipated, and then escape responsibility for their carelessness in the premises on the ground that they were not authorized to do such things.*" *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. 2d 71, 76, 77, 85 N. W. 2d 772. (Emphasis supplied.)

There is, therefore, a triable question of fact, viz., the scope of Bailey's employment with the city.

Whether the trial court felt, or this court feels, the evidence preponderated on one side or the other of the question is not important. Trial on affidavits and ad-

verse examinations is not an objective contemplated by summary-judgment procedure. *Hyland Hall & Co. v. Madison Gas & Electric Co., supra,* p. 245; *Stafford v. General Supply Co.* (1958), 5 Wis. 2d 137, 92 N. W. 2d 267.

The three cases cited by appellant to support its contention that it cannot be held liable under the doctrine of respondeat superior are inapposite. The cases: *Strohmaier v. Wisconsin Gas & Electric Co.* (1934), 214 Wis. 564, 253 N. W. 798; *Potter v. Kenosha* (1955), 268 Wis. 361, 68 N. W. 2d 4; and *Weber v. Hurley* (1961), 13 Wis. 2d 560, 109 N. W. 2d 65, all involved a city's liability for the acts of the contractor. In all three cases the contractor was determined to be an independent contractor.

We are now concerned with the alleged negligence of Bailey. Whether Dupons was an independent contractor, whether the city is liable for Dupons' acts, and whether the city has a right of indemnification from Dupons have no bearing on the question of the city's liability to the plaintiffs and contribution to Wisconsin Natural Gas for the acts of Bailey.

Does sec. 62.15 (11), Stats., insulate the city from liability for the negligence of its employee, Bailey?

Sec. 62.15 (11), Stats., provides:

"STREET OBSTRUCTION. All contractors doing any work which shall in any manner obstruct the streets or sidewalks shall put up and maintain barriers and lights to prevent accidents, and be liable for all damages caused by failure so to do. All contracts shall contain a provision covering this liability, and also a provision making the contractor liable for all damages caused by the negligent digging up of streets, alleys or public grounds, or which may result from his carelessness in the prosecution of such work."

In compliance with this provision the contract between the city and Dupons contained the following provision:

"And the said contractor further covenants and agrees to protect, keep and hold the said City harmless against

all actions, claims or demands for damages, of any kind or character whatever, which may in any wise be caused by the negligent digging up of streets, alleys or public grounds, by improper care of trees and shrubbery or by any other act of the Contractor, or which may result from the default, carelessness or neglect of said Contractor, his agents, employees or workmen in the prosecution of said work, and shall refund to said City all sums which it may be obliged or adjudged to pay on any such claims or demands, within a reasonable time after demand therefor."

And the general specifications contained the following provision:

"Section 24—Protection against liability for damages

"The Contractor and the Surety will be held responsible for and shall save the City harmless from all liability for damages occasioned by the digging up, use or occupancy of the street, alley, highway, public grounds and private grounds, or which may result therefrom, or which may result in any way from the negligence or carelessness of the Contractor, his agents, employees or workmen; or by reason of the elements, unforeseen or unusual difficulties, obstructions, or obstacles encountered in the prosecution of the work; and they shall indemnify the City for and save it harmless from all claims and liabilities, actions and causes of action, and liens for materials furnished or labor performed in the construction or execution of the work, and from all costs, charges and expense incurred in defending such suits or actions, and from and against all claims and liabilities for injury or damage to persons or property emanating from defective or careless work methods, or from and against all claims or liabilities for royalties, license fees, actions, suits, charges and expenses or damage from infringement for reason of the use of any invention or improvements in tools, materials, equipment or plant or any process, device or combination of devices, used in the construction of the work."

The city contends the statutory and contractual provisions place the responsibility for the damages caused by

the explosion and fire solely upon the contractor, Dupons, and cites the case of *Clausen v. Eckstein* (1959), 7 Wis. 2d 409, 97 N. W. 2d 201. In that case it was held that a contractor cannot delegate the responsibility imposed by sec. 62.15 (11), Stats.

The trial court had held that the contractor, Eckstein, was not liable for the negligence of a city employee in failing to safeguard a street obstruction with sufficient lights and barriers since the duty to safeguard the obstruction was that of the city by contract. The city was not a party to the action and consequently its liability was not before this court on appeal. However, this court held that the trial court's decision ignored sec. 62.15 (11), Stats. The court said, at page 416:

"The contractor cannot avoid the duty imposed on him in this statute by delegating the performance of the duty to another. If the duty in fact is performed by another such performance inures to the contractor's benefit; but if the duty is not performed the contractor is charged with the failure and its consequences."

The *Clausen Case, supra,* however, does not apply to the situation presented in the case at bar. Sec. 62.15 (11), Stats., clearly places the duty to safeguard street obstructions on the contractor. The liability under this portion of the statute is that of the contractor and it cannot be imposed upon the city regardless of who committed the negligent act. However, the remainder of the statute, the portion appellant contends insulates it from liability, merely renders the contractor liable for damages *"caused* by the negligent digging up of streets, . . . or which may result from *his carelessness* in the prosecution of such work." (Emphasis supplied.) Under this portion of the statute it would seem the contractor is only responsible for damages caused by his negligence. The liability under this portion is not absolute.

At most, Dupons' liability under the contract and the statute could be to indemnify the city for Bailey's negligence. That issue is not properly before the court in this motion for summary judgment [1] because it could not affect the right of the plaintiffs nor the defendant gas company to pursue their claims against the city. Further, advisory opinions dependent upon a resolution of factual disputes have no place in a decision on a motion for summary judgment.

The questions of Bailey's negligence, causation, and the scope of Bailey's employment are issues of fact to be determined at trial. The alleged negligence of Dupons and the gas company, if found, and the causal effect are factual issues that must likewise await a finding at trial. The decision on the liability on the part of the city, if any, to the plaintiffs and between the defendants must await a resolution of the facts.

The trial court properly denied the motion for summary judgment.

*By the Court.*—Order affirmed.

---

[1] The defendant, Dupons Construction Company, Inc., has not appeared in this appeal.