**MIDWEST KNITTING MILLS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 88–C–717.

United States District Court, E.D. Wisconsin.

July 10, 1990.

Richard F. Yanisch, Denny & Yanisch, Elm Grove, Wis., for plaintiff.

James Santelle, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## OPINION AND ORDER

CURRAN, District Judge.

Midwest Knitting Mills, Inc., a Wisconsin manufacturer of knitted goods, is suing the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671–80, for compensatory damages in the amount of $3,113,637.20, for injuries to its business. The plaintiff alleges that the Small Business Administration (SBA), an agency of the United States, caused injury to Midwest Knitting's business by its negligent supervision of employee Frederick Matthews and by its tortious interference with its own contract with Midwest Knitting. The plaintiff has fulfilled the statutory prerequisite to suit by filing an administrative claim with the local office of the Small Business Administration. *See* 28 U.S.C. § 2675. Six months passed with no action being taken, so Midwest Knitting deemed the claim denied. *See* 28 U.S.C. § 2675(a).

The United States has answered and denied liability. After the deadline for the completion of all discovery had passed, the defendant moved to dismiss for lack of subject matter jurisdiction and for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) & 56. This motion is now fully briefed and ready for decision.

### I. ALLEGATIONS OF THE COMPLAINT

In its Complaint, Midwest Knitting alleges that:

7. The defendant, through its Small Business Administration, created a structure known as the "8–A program", designed specifically to insure that worthy and qualified minority businesses would have the opportunity to obtain a fair share of the Federal government's military contracts. The distinctive feature of the 8–A program is the provision for "advance payments to cover the cost of material, labor, overhead and administration", this feature being intended to assist otherwise viable companies, equipped with production capability and staff, but short of operating capital, to handle profitable contracts. Plaintiff qualified and was certified as an 8–A contractor in 1978 and recertified in 1982, and thereafter secured and fulfilled a number of military contracts obtained under the aforementioned program through its Milwaukee, Wisconsin, office. At the time of the termination of plaintiff's business

in January of 1986, plaintiff, through the Milwaukee, Wisconsin, office of the Small Business Administration, had been awarded and was either working on or was prepared to commence work on five contracts whose total value exceeded the sum of two million dollars.

Plaintiff depended on and relied on the advance payment provisions of the 8–A program to enable it to fulfill its production requirements on the contracts awarded to it.

8. Plaintiff complied in all respects with the rules and regulations of the 8–A program aforesaid and qualified for advance payments on its military contracts; that such advance payments were duly approved by appropriate authorities in the Small Business Administration chain of command, but that such payments never reached the plaintiff company due to dereliction, negligence, and deliberate sabotage on the part of the Business Development Specialist, one Frederick Matthews, assigned by the Small Business Administration to plaintiff's cases to oversee, monitor and assist in the procurement and development of plaintiff's contracts and to administratively expedite the processing of plaintiff's application for advance payments aforesaid.

The failure to receive the advance payments as approved and authorized prevented plaintiff from commencing and pursuing production as planned, with the result that expensive machinery remained unused, trained personnel on plaintiff's payroll were idled and then released from employment, plaintiff's financial obligations went into default, production deadlines were defaulted, and the company was forced to terminate production and close its operation.

9. That the failure of plaintiff company to receive the advance payments for which it had qualified was a direct result of the retention in office of the aforesaid Business Development Specialist by the Small Business Administration management personnel, and the failure of the government's supervisory personnel to exercise due care in the supervision of the said Business Development Specialist assigned to plaintiff's project; that such supervisory personnel were well aware, or should have been aware, that such Business Development Specialist was not carrying out his duties and was in fact incapable of so doing because of personal habits and attitudes, and chemical involvement and dependency, resulting in physical, intellectual and emotional infirmities; that such infirmities on the part of the Business Development Specialist were well known, or should have been known, to the government's supervisory and administrative personnel at its Small Business Administration offices in Milwaukee, Wisconsin, at its Madison, Wisconsin, district office, and at its Chicago, Illinois, regional office, and yet, despite such knowledge, his superiors failed to take remedial action, retained him in office and continued his assignment to plaintiff's contracts; that such conduct on the part of the government's supervisory personnel constitutes negligence and dereliction on the part of the defendant and was a direct and proximate cause of the failure of plaintiff's business and the resultant damage to it.

10. That further, after plaintiff's business was in jeopardy due to the aforementioned facts, on October 10, 1985, the Small Business Administration, through its management personnel, did make demand on the plaintiff for the surrender and termination of all of its Small Business Administration contracts and did utilize its economic power to enforce such demand and compel compliance by plaintiff.

Complaint at ¶¶ 7–10.

The plaintiff claims that, because of this conduct on the part of Small Business Administration personnel, it was forced to surrender its contracts and "was deprived of the right to complete the subject contracts and was deprived of the profits to be derived therefrom, as well as the profits to be derived from the future operation of plaintiff's company; that such damages are in the amount of $3,113,637.20." Complaint at ¶ 11.

Based on these allegations, the plaintiff raises two theories of liability: (1) that the SBA was negligent in supervising Frederick Matthews, an SBA employee who was responsible for monitoring and overseeing contracts and handling advance payment requirements and processing, *see* Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment at 2–12; and (2) that the SBA tortiously interfered with its own contract with Midwest Knitting.[1] *See Id.* at 12–15.

## II. DEFENDANT'S MOTION TO DISMISS

### A. DEFENDANT'S POSITION

The defendant has moved the court for an order dismissing all of the plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) & 56. The United States contends that:

> [B]ased upon the nature of the allegations articulated in the complaint and the elucidation of the cause of action advanced by the plaintiff during the course of pretrial discovery, there exists no jurisdictional basis upon which monetary damages might properly be awarded to the plaintiff in this federal forum, thus justifying the entry of judgment in favor of the defendant and the outright dismissal of the complaint.

Memorandum in Support of Motion of Defendant United States of America to Dismiss and for Summary Judgment at 4–5. Specifically, the defendant contends that this court is without jurisdiction to entertain this action under the Federal Tort Claims Act because Wisconsin does not recognize the tort of improper or inadequate employment supervision and because claims for interference with contract rights are specifically excluded from the Federal Tort Claims Act's waiver of sovereign immunity. *See Id.* at 5 & 11.

### B. LEGAL STANDARDS

■ The United States has moved to dismiss Midwest Knitting Company's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that all the claims are barred by the doctrine of sovereign immunity. The government has also submitted affidavits and other matters outside the pleadings, so it has moved for an order granting summary judgment. *See* Federal Rule of Civil Procedure 56(c). The Seventh Circuit has explained that evidentiary materials can be considered in resolving a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and that challenges to jurisdiction should be dealt with under Rule 12(b)(1) rather than as a motion for summary judgment. *See Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990); *Crawford v. United States*, 796 F.2d 924, 928–29 (7th Cir.1986). Therefore, the court will confine itself to ruling on the motion to dismiss. Matters outside the pleadings need be considered only insofar as the jurisdictional issue is intertwined with the issue of whether the plaintiff has established all the essential elements of claims upon which relief can be granted. *See Roman v. United States Postal Service*, 821 F.2d 382, 385 (7th Cir.1987).

■ When subject matter jurisdiction is put at issue under any federal procedural rule, the burden of proving the jurisdictional allegations is on the party asserting jurisdiction. *See Grafon Corporation v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). In the instant case, the issues raised by the government's motion are legal rather than factual. Therefore, even though there appear to be material facts in dispute bearing on the merits of the plaintiff's claims, for purposes of resolving the jurisdictional issue, the court will accept the plaintiff's allegations of fact as true and will decide whether, nevertheless, Midwest Knitting's claims are barred by the

---

1. The plaintiff has specifically denied that it is raising a claim under a tort theory of misrepresentation. Instead, Midwest Knitting asserts that "negligent supervision of an employee forms the gravamen of the complaint." Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment at 15.

doctrine of sovereign immunity as a matter of law.

## C. SOVEREIGN IMMUNITY

■ The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) & 2671–80, provides for a limited waiver of the government's sovereign immunity for certain claims sounding in tort. Absent a waiver of sovereign immunity, a plaintiff's claims cannot survive. It is established principle that the United States, as sovereign, "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1975) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)). A waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *Testan*, 424 U.S. at 399, 96 S.Ct. at 953; *Ascot Dinner Theatre v. Small Business Administration*, 887 F.2d 1024, 1027 (10th Cir.1989). Thus, when no explicit consent to suit exists under the FTCA, a district court is without jurisdiction to entertain a suit against the United States. *See Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156 (5th Cir.1981).

### 1. Negligent Supervision

The Federal Tort Claims Act states that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Therefore, as a threshold matter, a plaintiff must establish that the government "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Campbell v. United States*, 904 F.2d 1188, 1191 (7th Cir.1990). The Seventh Circuit has stated that: "Because the FTCA is, in effect, a jurisdictional statute, the failure to establish adequately compliance with § 1346(b) deprives the court of subject matter jurisdiction over the suit." *Misany v. United States*, 826 F.2d 612, 614 (7th Cir.1987).

In this case the parties agree that "the place where the act or omission occurred" is in the State of Wisconsin. Therefore, Wisconsin law governs the substance of Midwest Knitting's claims. *See Gales v. United States*, 617 F.Supp. 42, 43 (W.D.Pa. 1985), *aff'd*, 791 F.2d 917 (3d Cir.1986) (mem.). Accordingly, the plaintiff's allegations, taken as true, must state a cause of action under Wisconsin law. *See Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988). As pointed out by the government, an initial inquiry to be made in this case is whether, under Wisconsin law, an individual can be held liable for negligent supervision.

The plaintiff contends that an employer, such as the government, has an independent duty to third persons such as Midwest Knitting to use due care in supervising employees such as Frederick Matthews who are engaged in administering contracts. The plaintiff alleges that Matthews[2] engaged in intentional and negligent conduct in his handling of Midwest Knitting's applications for prepayments from the SBA which led to the ruin of Midwest Knitting's business. *See* Affidavit of Assistant United States Attorney James L. Santelle in Support of Motion of Defendant United States of America to Dismiss and for Summary Judgment as Exhibit A (Transcript of Deposition of James DeShazer), p. 177.

■ Under section 2680(h) of the FTCA, 28 U.S.C. § 2680(h), "the United States is not liable for the intentional torts of those carrying out its business, even though the plaintiff alleges a claim of primary negligence on the part of the United States in failing to supervise or otherwise avoid foreseeable risks." *Guccione v. United States*, 847 F.2d 1031, 1036 (2d Cir.1988), *reh'g denied*, 878 F.2d 32, 33 (2d Cir.1989) (intentional tort exception to the FTCA excludes any claim predicated upon government's breach of an independent duty to

---

**2.** At all times relevant to this complaint, Frederick Matthews was employed by the SBA as a GS–12 Business Development Specialist. *See*

Affidavit of Attorney Richard F. Yanisch in opposition to Motion to Dismiss and for Summary Judgment at Exhibits.

supervise when government's liability arises, if at all, only because of the government's employment relationship with the employee engaging in intentional tortious conduct), *cert. denied*, —— U.S. ——, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990). *Cf. Sheridan v. United States*, 487 U.S. 392, 398–403, 108 S.Ct. 2449, 2453–56, 101 L.Ed.2d 352 (1988) (intentional tort exception to the FTCA does not bar claim for government's negligence in failing to supervise or control person who committed assault and battery in military hospital because government's liability in this situation is entirely independent of employment relationship between tortfeasor and government). Therefore, the government cannot be liable for negligently supervising any intentional conduct on the part of Matthews. At most, the court can only consider whether Midwest Knitting has a cause of action for the government's negligent supervision of Matthews' negligent acts.[3]

▪▪▪ The government argues that Wisconsin has not recognized a tort of negligent supervision and that this state's law imposes no independent duty upon an employer to supervise administrative employees. In attempting to meet its burden of establishing jurisdiction, Midwest Knitting cites *Frew v. Dupons Construction Company, Inc.*, 37 Wis.2d 676, 155 N.W.2d 595 (1968),[4] in which one defendant, the City of Kenosha, appealed the denial of its summary judgment motion. The plaintiffs in that case were suing Dupons Construction Company, the City of Kenosha and others for damages sustained when a fire and explosion destroyed a building owned by the plaintiffs. The defendants were constructing a sewer line when a city inspector discovered that gas was escaping from a damaged valve and failed to notify the gas

company. The leak soon led to the explosion and fire resulting in the damage to the plaintiff's property.

The Wisconsin Supreme Court ruled that the denial of summary judgment was proper because the plaintiff had raised a jury question as to whether the City's inspector was acting within the scope of his employment. *Id.* at 685, 155 N.W.2d at 600. The court also ruled that the city was not totally insulated from liability by statutory and contractual provisions.

Nowhere in this opinion did the Wisconsin Supreme Court rule that an employer can be held liable for breach of an independent duty to a third party to supervise its employees. Instead, the court merely discussed employer liability under the well-established doctrine of *respondeat superior* whereby: "A master is subject to liability for physical harm caused by the negligent conduct of servants within the scope of employment."[5] *Id.* at 682, 155 N.W.2d at 598 (quoting Restatement, 1 Agency (2d), p. 536, sec. 243.). Midwest Knitting does not say that it is attempting to hold the government liable for Matthews' negligence under the doctrine of *respondeat superior*. But even if it were, there is nothing in the record to suggest that Matthews' alleged negligent acts resulted in any physical harm. Therefore, the doctrine would not apply.

The plaintiff also cites two cases from other jurisdictions in attempting to persuade the court that it has a claim for negligent supervision. In *International Distributing Corporation v. American District Telegraph Company*, 569 F.2d 136 (D.C.Cir.1977), the District of Columbia Circuit reversed a trial court's grant of sum-

---

3. The Second Circuit has observed that, when a plaintiff is attempting to escape the FTCA's intentional tort exception, the allegations of negligence may merely be allegations of intentional conduct in artfully redrawn form. *See Guccione v. United States*, 847 F.2d at 1034. In the instant case neither the intentional nor the negligent tortious conduct of Matthews has been clearly delineated or differentiated by the plaintiff's allegations.

4. The plaintiff cites two additional Wisconsin cases, *Schicker v. Leick*, 40 Wis.2d 295, 162 N.W.2d 66 (1968) and *Hoeverman v. Feldman*, 220 Wis. 557, 265 N.W. 580 (1936), but only for general propositions of tort law.

5. The Attorney General has not certified and the government has not admitted that Frederick Matthews was acting within the scope of his employment if he engaged in the tortious conduct alleged by the plaintiff. *See* 28 U.S.C. § 2679.

mary judgment on a claim of negligent supervision. On appeal, the court ruled that an employer may be liable for the negligent breach of its duty to supervise employees who are privileged because of their employment to enter another's property. Thus, the operator of a burglar alarm service could be held liable for thefts committed by two of its employees. The second case cited also arose in the District of Columbia and was brought under the FTCA by a homeowner who claimed that the government was liable for its negligent supervision of a contractor and for negligent supervision of a rehabilitation project. See *Melton v. United States*, 488 F.Supp. 1066 (D.D.C.1980). The court ruled that this theory of liability was not barred by the discretionary function exception to the FTCA. It did not consider the viability of the theory under District of Columbia law.

Even if a cause of action for negligent supervision of an administrative employee is recognized in the District of Columbia, the law of another jurisdiction is not rele-

vant in this case.[6] Only the law of Wisconsin may be applied. See *Misany v. United States*, 873 F.2d 160, 163 n. 2 (7th Cir.1989); *Gard v. United States*, 594 F.2d 1230, 1234 (9th Cir.) (court cannot choose to follow whatever law it feels to be most enlightened), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979).

Except to state that no Wisconsin appellate opinion has specifically rejected the tort of negligent supervision, the plaintiff has presented no reason why Wisconsin courts would recognize such a tort. Many jurisdictions have rejected this cause of action. See, e.g., *Chesapeake and Potomac Telephone Company of Virginia v. Dowdy*, 235 Va. 55, 365 S.E.2d 751 (1988); *Alford v. Life Savers, Inc.*, 210 Neb. 441, 315 N.W.2d 260 (1982). Recently, in concluding that such a cause of action does not exist in Kansas, the Tenth Circuit observed in an employment rights case that: "Plaintiff has cited no cases in Kansas or elsewhere, recognizing such a cause of ac-

---

**6.** In its Proposed Findings of Fact and Conclusions of Law, submitted after the briefing of the summary judgment motion was completed, the plaintiff cites two additional cases in which plaintiffs attempted to mount FTCA claims for negligent supervision. Like *International Distributing* and *Melton*, these cases have no bearing on the viability of a negligent supervision claim under Wisconsin law. In the first case, *Andrews v. United States*, 732 F.2d 366 (4th Cir.1984), a woman living in South Carolina was allowed to sue the supervisor of a physician's assistant. The assistant had sexually seduced her under the guise of rendering medical treatment. The Fourth Circuit ruled that her claim for negligent supervision was not barred by the intentional tort exception to the FTCA, see 28 U.S.C. § 2680(h), because the claim did not arise out of assault and battery. Instead, the court labeled the claim as one for "medical malpractice," *Andrews*, 732 F.2d at 371, and ruled that the plaintiff could maintain her claim that a military doctor had failed to supervise his assistant after the doctor had been informed that the assistant's conduct was causing the plaintiff emotional damage. See *Id.* at 371 n. 7. The court focused on the applicability of the intentional tort exception and did not consider whether South Carolina recognized a cause of action for negligent supervision under such circumstances.

In the second case, *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), a case arising in Tennessee, the United States Supreme

Court ruled that a plaintiff's claim was not barred by the misrepresentation exception to the FTCA found in 28 U.S.C. § 2680(h). Plaintiff Onilea Neal had obtained a loan from the Farmers Home Administration (FmHA) for a prefabricated house. After she moved into the house, she discovered defects and sued the government under the FTCA for the failure of FmHA employees properly to inspect and supervise construction of the house. *Block v. Neal*, 460 U.S. at 290, 103 S.Ct. at 1090. The Court determined that, although the plaintiff was claiming that the FmHA had made misstatements to her, the gravamen of her claim was not misrepresentation, but that the FmHA had voluntarily undertaken to supervise the construction of her house and that FmHA officials had failed to use due care in carrying out their supervisory activity. *Id.* at 297, 103 S.Ct. at 1093. The Court noted, however, that although the Sixth Circuit had ruled that Neal had stated a claim against the United States under the common-law Good Samaritan doctrine, the court of appeals had not expressly considered whether Tennessee law recognizes this doctrine or whether, if it does, it would apply it to a private person responsible for similar negligence. *Id.* at 294 n. 3, 103 S.Ct. at 1092 n. 3. See also *Love v. United States*, 871 F.2d 1488, 1495 (9th Cir.1989) (questioning whether Montana law would impose liability for negligent supervision of loan deferral services under a good samaritan theory when the supervision was not performed specifically to promote safety from physical harm).

tion.... We also observe that this cause of action, once recognized, would necessarily arise any time a middle level supervisor engaged in discriminatory conduct. We think it unlikely that the Kansas courts would adopt a liability rule with such broad implications." *Polson v. Davis,* 895 F.2d 705, 710 (10th Cir.1990). It is equally unlikely that Wisconsin courts would conclude that an employer can be sued for the negligent supervision of an administrative employee where the employee's conduct did not result in physical injury to a person or property.

Because Midwest Knitting has not met its burden of establishing that the government would be liable to it in accordance with the law of Wisconsin, the court lacks subject matter jurisdiction over the claim for negligent supervision. Therefore, the plaintiff's negligent supervision claim will be dismissed for lack of jurisdiction. This claim will be dismissed with prejudice because the bar of sovereign immunity is absolute, so no other court would have the power to hear the case. *See Frigard v. United States,* 862 F.2d 201, 204 (9th Cir. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989).

### 2. Tortious Interference with Contract

 The plaintiff's second theory of liability is that the SBA tortiously interfered with its own contract with Midwest Knitting. In moving to dismiss, the government contends that such a cause of action is explicitly barred by a statutory exception to FTCA coverage. Section 2680 of the FTCA provides that:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> ....
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights....

28 U.S.C. § 2680(h).

The defendant also points out that Midwest Knitting has not established that Wisconsin recognizes a cause of action for a

defendant's interference with its own contract with a plaintiff. Instead, Wisconsin allows a plaintiff to seek relief for a defendant's tortious interference with an existing or prospective contract only when the contract at issue is between the plaintiff and a third party and only when the interference by the defendant is alleged to be intentional. *See Pure Milk Products Coop v. National Farmers Organization,* 90 Wis.2d 781, 796, 280 N.W.2d 691, 698 (1979); *Augustine v. Anti–Defamation League,* 75 Wis.2d 207, 219, 249 N.W.2d 547, 553 (1977).

Although Midwest Knitting has labeled its claim "interference with contract rights," the plaintiff maintains that its claim is not barred by the intentional tort exclusion to the FTCA because it is not making a claim for the government's interference with Midwest Knitting's contract with a third party. Rather, the plaintiff argues that:

> We believe that a proper understanding of the tort of interference with contract rights recognizes that this section of the code applies only to interference with contracts between plaintiff and a third party. The tort, and therefore the exception to the Federal Tort Claims Act Waiver of Sovereign Immunity does not apply when the contract is between the plaintiff and the defendant and the defendant's tortuous [sic] acts impair property rights acquired under the contract.

Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment at 13.

In support of this theory, the plaintiff cites *Fort Vancouver Plywood Company v. United States,* 747 F.2d 547 (9th Cir. 1984), a case which arose in the State of Washington, in which the plaintiff had entered into a timber sales contract with the United States Forest Service. After most of the timber was cut, the Forest Service conducted a slash burn on adjoining property. The fire swept through Fort Vancouver's sale, destroying both cut and standing timber. Fort Vancouver then filed a lawsuit under the FTCA for loss of the timber. *Id.* at 549. The Ninth Circuit

ruled that the plaintiff's claims were not barred by the intentional tort exceptions to the FTCA. *See* 28 U.S.C. § 2680(h). The court reasoned that:

> This case does not involve a contract between plaintiff and a third party. It involves a contract between plaintiff and the government. Consequently, this is not an interference with contract rights claim and the section 2680(h) exception does not apply.

*Fort Vancouver Plywood Company,* 747 F.2d at 554. The court went on to explain that: "A different situation is presented when the contract is between the plaintiff and the defendant and the defendant's tortious acts impair property rights acquired under the contract." *Id.* The court concluded that there had been no interference with the contract itself, but that the contract only established Fort Vancouver's property interest in the timber—an interest allegedly invaded by the government's negligence in starting and maintaining the fire.

The plaintiff also cites *Nicholson v. United States,* 177 F.2d 768 (5th Cir.1949), a case which arose in Georgia, in which the plaintiff entered into a contract with the government for the labor of prisoners of war. The plaintiff claimed that, due to the negligence of the prisoners and their guard, his barn caught fire and burned. The trial court granted summary judgment in favor of the government on the ground that the claim was barred by the "interference with contract" exception to the FTCA. *See* 28 U.S.C. § 2680(h). However, the Fifth Circuit reversed saying that Nicholson's cause of action was not barred merely because he had a contractual relation with the government. *Id.* at 769. The guard and prisoner's duty to act with due care for the plaintiff's property was a duty independent of any terms of the parties' contract.

In the instant case the plaintiff has not identified any independent, noncontractual right with which the SBA has interfered. In both *Fort Vancouver* and *Nicholson* the plaintiffs suffered physical injury to their property, while Midwest Knitting has merely claimed that the government impaired unspecified "property rights under the contract." Memorandum in Opposition to Defendant's Motion to Dismiss and for Summary Judgment at 13. Other than claiming that the government acted negligently in not providing Midwest Knitting with advance payments,[7] the plaintiff's only other factual support for its interference with contract allegations is that the government cancelled four of its contracts with Midwest Knitting. Concomitantly, the damages Midwest Knitting is seeking are the sum total of the lost payments for these four cancelled contracts. *See* Complaint at ¶ 11; Memorandum in Support of Motion of Defendant United States of America to Dismiss and for Summary Judgment at 11. Thus, this "interference with contract" claim cannot be saved by the rulings in *Fort Vancouver* or *Nicholson.* It is merely a restatement of the negligent supervision claim coupled with a breach of contract claim. Any liability of the government for the cancelling of the contracts depends wholly upon the government's alleged failure to perform its alleged promises. It is well-established that breach of one's own contract is not a tort. *Blanchard v. St. Paul Fire and Marine Insurance Company,* 341 F.2d 351, 357 n. 3 (5th Cir.), *cert. denied,* 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965).

In sum, the plaintiff has not met its burden of persuading the court that it has subject matter jurisdiction over this interference with contract claim. Midwest Knitting has failed to establish that it could maintain such a cause of action under Wisconsin law, *see* 28 U.S.C. § 2674, and any claims for tortious interference with contract are explicitly excluded from coverage by the FTCA. *See* 28 U.S.C. § 2680(h). The sole remedy for breach of contract claims against the government lies under the Tucker Act. *See* 28 U.S.C. §§ 1346(a)(2) & 1491(a)(1). *See also Blanchard v. St. Paul Fire and Marine Insurance Company,* 341 F.2d 351, 357–59

---

7. A contractor has no independent right or entitlement to financing from the SBA. *See Ascot*

*Dinner Theatre v. Small Business Administration,* 887 F.2d 1024, 1030 (10th Cir.1989).

**1354**

(5th Cir.), *cert. denied,* 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965); *Woodbury v. United States,* 313 F.2d 291, 295–96 (9th Cir.1963). Consequently, because the United States has not consented to suit under such a theory, this claim is barred by the doctrine of sovereign immunity and it will be dismissed with prejudice, *see supra* p. 1352, for lack of subject matter jurisdiction.

### ORDER

Because the plaintiff's claims are barred by the doctrine of sovereign immunity and because the court lacks subject matter jurisdiction over them, the court ORDERS that the Motion of Defendant United States of America to Dismiss (filed May 2, 1990) IS GRANTED. *See* Federal Rule of Civil Procedure 12(b)(1).

IT IS FURTHER ORDERED that this action IS DISMISSED with prejudice.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment of dismissal as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that all the claims of plaintiff Midwest Knitting Mills, Inc. are dismissed for lack of subject matter jurisdiction and that this action is dismissed with prejudice.

Done and Ordered.