**MIDWEST KNITTING MILLS, INCORPORATED, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–2984.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1991.

Decided Dec. 18, 1991.

Richard F. Yanisch, (argued), Denny & Yanisch, Elm Grove, Wis., for plaintiff-appellant.

James L. Santelle, Asst. U.S. Atty. (argued), Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, and POSNER, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Midwest Knitting Mills, Inc. (Midwest Knitting) brought this action for damages under the Federal Tort Claims Act. It alleged that the government, acting through the Small Business Administration (SBA), negligently supervised and retained an employee known to be derelict in his duties. The district court dismissed the case for lack of subject matter jurisdiction. It held that, under these facts, Wisconsin would not recognize the tort of negligent supervision or retention of an employee. For the following reasons, we affirm the judgment of the district court.

# I

# BACKGROUND

A. *Facts*

When reviewing the grant of a motion to dismiss, we assume the truth of all well-pleaded factual allegations. *See Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990). Midwest Knitting was a Milwaukee manufacturer of knitted goods. It was also a subcontractor, and the SBA was prime contractor, for several contracts under the SBA's 8(a) program. *See* 13 C.F.R. § 124 and Standard Operating Procedure 80.05. This program permits capital-poor minority companies to receive advance payments needed to compete. Midwest Knitting had successfully completed several 8(a) contracts prior to 1983. In 1983, the SBA assigned Frederick Matthews to act as Midwest Knitting's Business Development Specialist. Matthews had the responsibility of processing Midwest Knitting's applications for advance payments. In 1984 and 1985, Midwest Knitting was awarded five contracts, the largest in excess of $1,250,000. Allegedly because of "dereliction, negligence, and deliberate sabotage" by Matthews, Midwest Knitting never received its advance payments. R.1 at ¶ 8. According to Midwest Knitting, Matthews had a chemical dependency that resulted in "physical, intellectual and emotional infirmities." *Id.* at ¶ 9. Midwest Knitting further alleged that his supervisors retained him during this period even though they were aware of his poor performance. As a result of SBA's negligent supervision, Matthews remained in a position of responsibility. He never forwarded the advance payments to Midwest Knitting, which was forced to surrender its contracts in October 1985 and go out of business at the end of the year. Midwest Knitting seeks damages in the amount of its canceled contracts plus the value of future business lost as a result of its cessation of operations.

B. *Statutory Overview*

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) & 2671–2680,

effects a limited waiver of sovereign immunity for the United States. With specific exceptions, the FTCA renders the federal government liable in tort as a private individual would be under like circumstances. The FTCA provides that federal district courts

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The terms of the United States' consent to be sued in any court define the district court's jurisdiction to entertain the suit. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Thus, when no explicit consent to suit exists under the FTCA, a district court is without jurisdiction to entertain a suit for damages against the United States. *See Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1156 (5th Cir.1981). Because the FTCA incorporates the substantive law of the state where the tortious act or omission occurred, a plaintiff must state a claim that is actionable under the substantive law in the state where the act or omission occurred. *See* 28 U.S.C. § 1346(b); *Campbell v. United States,* 904 F.2d 1188, 1191 (7th Cir.1990). Therefore, if there is no cause of action under state law, the district court is without jurisdiction.

### C. *District Court Proceedings*

The district court examined Midwest Knitting's claims against the United States on two theories: (1) the SBA's negligent supervision and retention of Matthews and (2) tortious interference with its own (that is, the SBA's own) contract with Midwest Knitting. *Midwest Knitting Mills, Inc. v. United States,* 741 F.Supp. 1345, 1348 (E.D.Wis.1990). Both parties agreed that Wisconsin substantive law would govern because that was the state where the act or omission occurred. *Id.* at 1349. The district court held that Wisconsin courts would not recognize the tort of negligent supervision of an employee in this situation, nor would they recognize a claim for interference with one's own contract rights. The district court then dismissed Midwest Knitting's claims with prejudice under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction.

The district court found no Wisconsin cases to support Midwest Knitting's contention that Wisconsin would hold an employer directly liable under a theory of negligent supervision for the acts of its employees.[1] The court determined that the principal case upon which Midwest Knitting relied, *Frew v. Dupons Construction Co.,* 37 Wis.2d 676, 155 N.W.2d 595 (1968), was based on the "well-established doctrine of *respondeat superior*" to impose liability on the employer. 741 F.Supp. at 1350. "Except to state that no Wisconsin appellate opinion has specifically rejected the tort of negligent supervision, the plaintiff has presented no reason why Wisconsin courts would recognize such a tort." *Id.* at 1351. The district court stated further that "[i]t is ... unlikely that Wisconsin courts would conclude that an employer can be

---

1. As a threshold matter, the district court also held that the FTCA does not waive sovereign immunity for an actor's intentional actions and that Midwest Knitting thus could not recover for Matthews' intentional actions by trying to convert its cause of action into one for negligent supervision. 741 F.Supp. at 1349–50. "At most, the court can only consider whether Midwest Knitting has a cause of action for the government's negligent supervision of Matthews' negli-

gent acts." *Id.* at 1350. Midwest Knitting has not challenged this aspect of the district court's holding on appeal. In any event, the matter is of no consequence because we hold that, under the facts here, Wisconsin would not permit a cause of action for the employer's negligent supervision of *any* act of the employee, whether intentional or negligent, unless there is an allegation of personal injury or property damage.

sued for the negligent supervision of an administrative employee where the employee's conduct did not result in physical injury to a person or property." *Id.* at 1352. Therefore, the district court dismissed Midwest Knitting's negligent supervision claim with prejudice.[2] *Id.*

## II

## ANALYSIS

### A. *Guiding Principles*

Midwest Knitting contends that, although there is no case directly on point, the district court had an obligation to determine more carefully whether Wisconsin *would* recognize the tort of negligent supervision:

> Where there were no precise state precedents as to whether plaintiff's averments constituted a recognized cause of action in negligence, for which recovery could be had under the [FTCA], it was incumbent on the Federal Court to make its own determination of what the state Supreme Court would probably rule in a similar case.

Appellant's Br. at 9 (citing *Quinones v. United States,* 492 F.2d 1269, 1273 (3d Cir.1974)). In its brief, the government submits that the district court was under no obligation to speculate on the likely response of a Wisconsin court to the tort of negligent supervision. Appellee's Br. at 16. However, at oral argument, the government conceded that it was appropriate for the district court to look to existing precedent and to predict what Wisconsin courts would hold. This concession evidences a far more realistic assessment of the case law than the government's earlier position. This court has recognized that, in cases brought under the FTCA:

> The decision of a federal court in a ... case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would

decide the case if it were presented to it. ... [T]he federal court has no choice but to speculate as to what the true grounds might be or to supply grounds that it thinks might recommend themselves to the state's courts in the future.

*Konradi v. United States,* 919 F.2d 1207, 1213 (7th Cir.1990). Nevertheless, we cannot agree with the appellant that the district court's opinion, when read in its totality, establishes that the district court misapprehended its responsibility to determine the content of Wisconsin law. Of course, in FTCA cases, no less than in diversity cases, *see Salve Regina College v. Russell,* — U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), it is incumbent upon us to determine de novo the correctness of the district court's determination of the content of state law. Therefore, we must undertake an analysis of what the Supreme Court of Wisconsin would have done, if presented with this case.

### B. *Application to This Case*

#### 1. The tort of negligent supervision

█ The tort of negligent supervision places liability upon a master for injuries inflicted on third persons by its servant when the master was guilty of selecting a servant incompetent or otherwise unfit to perform the services for which he was employed. 57 C.J.S. *Master and Servant* § 559 (1948). As the parties correctly note, the Wisconsin Supreme Court has never explicitly recognized the existence of this tort by holding an employer liable for negligent retention or supervision of an employee. However, we have no reason to believe that Wisconsin would reject this cause of action if the matter were before its supreme court as a matter of first impression. The tort of negligent supervision of employees enjoys a secure position in the mainstream of American common law.

---

**2.** The district court also dismissed Midwest Knitting's second cause of action for interference with the contract between the SBA and Midwest Knitting. "[T]he plaintiff has not identified any independent, noncontractual right with which the SBA has interfered." *Midwest*

*Knitting,* 741 F.Supp. at 1353. On appeal, Midwest Knitting has disowned this characterization of its cause of action. *See* Appellant's Br. at 24–26 ("This declaration imputes to plaintiff the position which it has never taken in its claim under the complaint.").

The Restatements of both Torts[3] and Agency[4] recognize it, as does at least one of Wisconsin's neighbors. *See Ponticas v. K.M.S. Inv.*, 331 N.W.2d 907, 910 (Minn. 1983).[5] Professors Prosser and Keeton write that a master "may, of course, be liable on the basis of any negligence of his own in selecting or dealing with the servant ... upon familiar principles of negligence and agency law." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70, at 501–02 (5th ed. 1984).

Wisconsin cases have sustained causes of action analogous to the tort of negligent supervision of employees. In *Kamp v. Coxe Brothers & Co.*, 122 Wis. 206, 99 N.W. 366 (1904), the Wisconsin Supreme Court examined whether a wrongful death action could exist against an employer when an incompetent employee failed to warn a fellow employee of danger and that employee was killed. The court held that "the master who negligently or knowingly employs or retains an incompetent servant is liable for injuries thereby resulting to fellow servants who are not themselves negligent." *Id.* 99 N.W. at 371. The court reasoned further that one "who knowingly exposes another to an imminent peril should respond for the result." *Id.* While the facts and, to some extent, the policy concerns underlying the *Kamp* decision are analogous to this case, it is not controlling. The Wisconsin Supreme Court's holding is limited to interpreting an exception to the common law fellow-servant rule[6] that a master has a duty to select servants who will not endanger fellow servants through negligence on the job.

Later Wisconsin cases have recognized claims arising from the failure to supervise adequately the work of an independent contractor. *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764, 765 (1974) (architect allegedly failed to supervise adequately the construction of a building); *Laesch v. L & H Indus., Ltd.*, 161 Wis.2d 887, 469 N.W.2d 655, 657 (1991) (railroad allegedly failed to supervise adequately a contractor hired to remove rails from a right of way). Also, in the context of medical malpractice, the Wisconsin Supreme Court has held that a hospital has a duty to employ competent physicians. *Johnson v. Misericordia Community Hosp.*, 99 Wis.2d 708, 301 N.W.2d 156, 170–71 (1981) (hospital had a duty to hire competent doctors which it could breach by

---

**3.** Restatement (Second) of Torts § 317 (1965) states that:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if:

....

b) The master
(i) knows or should know that he has the ability to control the servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control. Note (c) states that a master may subject himself to liability by retaining incompetent servants who, to his knowledge, are in the habit of misconducting themselves to the danger of others.

**4.** Restatement (Second) of Agency § 213 (1958) states that "a person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless ... in the employment of improper persons or instrumentalities in work involving the risk of harm to others."

**5.** *Ponticas* actually dealt with the tort of negligent hiring, not negligent retention. However, the court made clear that it saw "no substantial difference in imposing a duty on an employer to use reasonable care in the initial hiring from his duty to use that care in the retention of an employee." 331 N.W.2d at 911. The Illinois Appellate Court has held that "it is settled law in Illinois that there is ... a cause of action against an employer for negligently hiring someone the employer knew, or should have known, was unfit for the position to be filled." *Easley v. Apollo Detective Agency, Inc.*, 69 Ill.App.3d 920, 26 Ill.Dec. 313, 320, 387 N.E.2d 1241, 1248 (1979).

**6.** The common law fellow-servant rule stated that, in an action for damages against an employer by an injured employee, the employer would not be liable for the negligence of a fellow employee. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 571 (5th ed. 1984). This doctrine has generally been replaced by workers' compensation acts. *Id.* at 572.

allowing an unqualified surgeon to perform negligently an operation).[7]

### 2. The economic or commercial damages rule

■ However, although we believe that Wisconsin generally would recognize tort claims arising out of the negligent supervision of an employee, we also believe that the district court correctly concluded that a Wisconsin court would not allow Midwest Knitting's particular negligent supervision claim. Midwest Knitting bases its action on a negligence theory—the alleged negligence of the SBA in allowing Matthews to administer the 8(a) contracts. As relief, it seeks reimbursement for the profits it lost because of the cancellation of those contracts. It alleges no personal injury or property damage because of the SBA's alleged negligence. Rather, its losses are purely economic.

■ As this court noted in *Miller v. United States Steel Corp.*, 902 F.2d 573, 574–75 (7th Cir.1990), there is now substantial evidence that Wisconsin would decline in all circumstances to allow a negligence suit for the recovery of only economic damages, even when there is no contractual relationship between the parties.[8] "An increasing number of jurisdictions hold that tort law provides no remedy in a case in which the plaintiff is seeking to recover for a commercial loss rather than damage to person, property, or reputation." *Id.* at 574. *See Rardin v. T & D Mach. Handling, Inc.*, 890 F.2d 24, 27–28 (7th Cir. 1989) (collecting cases); *see also Collins v. Reynard*, No. 70325, 1991 WL 220561 at * 5 (Ill. Oct. 31, 1991) (holding that economic damages are not available in negligence suit against attorney for malpractice). As a leading treatise notes, "[g]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons or tangible things." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 657 (5th ed. 1984); *see also* 4 Fowler V. Harper et al., *The Law of Torts* §§ 25.18A to 25.18D (2d ed. 1986) (discussing the general rule that economic damages alone are not compensable in negligence).

In *Link Builders*, 214 N.W.2d at 770, the Wisconsin Supreme Court held that economic losses sometimes may be recovered in a negligence suit. However, in *Link Builders* the plaintiffs were seeking remedies for economic losses *and* for property damage allegedly caused by an architect's negligence. As we recognized in *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir.1985), "Wisconsin does allow, as do many states, the recovery of economic loss in tort when the economic loss is combined with damage to the plaintiff's person or property." However, the presence of personal or property damage is required for recovery. This court emphasized that point in *Leadfree Enterprises, Inc. v. United States Steel Corp.*, 711 F.2d 805, 808 (7th Cir.1983), where we held that Wisconsin law would not allow users of a bridge to recover for economic harm that they incurred when the bridge was closed due to the defendants' negligence. The panel, which numbered among its members a former justice of the Wisconsin Supreme Court, held that Wisconsin law required that a negligence claim for economic damages be linked to some form of personal injury or property damage. *Id.*

■ As *Miller* notes, despite whatever ambiguity might remain about the existence of a tort cause of action for economic injury alone in the total absence of a contractual relationship, it is clear that Wisconsin would not permit such a cause of action when the parties have a contractual

---

7. *Cf. Schneller v. St. Mary's Hosp. Medical Ctr.*, 155 Wis.2d 365, 455 N.W.2d 250 (1990), *aff'd*, 162 Wis.2d 296, 470 N.W.2d 873 (1991) (court considered a claim that contended, in part, that a hospital failed adequately to train, supervise, and prepare resident doctors).

8. *Cf. Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir.1985) (suggesting, by citation to *Landwehr v. Citizens Trust Co.*, 110 Wis.2d 716, 329 N.W.2d 411, 414 (1983), that a cause of action in tort might be sustained if there is "a duty existing independently of the performance of the contract.").

relationship and the injury is based on that relationship. *Miller,* 902 F.2d at 575. In *Northridge Co. v. W.R. Grace & Co.,* 162 Wis.2d 918, 471 N.W.2d 179, 182 (1991), the court discussed whether only economic damages could be recovered in a negligence suit arising from the sale of an allegedly defective product. It held that "[a] complainant's remedy for economic loss alone, without a claim for personal injury or physical harm to property other than the defective product itself, generally lies in a breach of warranty claim, and not in tort." *Id.; accord Sunnyslope Grading, Inc. v. Miller,· Bradford & Risberg, Inc.,* 148 Wis.2d 910, 437 N.W.2d 213, 217–18 (1989). As this court has previously noted,[9] Wisconsin draws a sharp distinction between contract and tort liability, reasoning that economic harm is primarily the subject of breach of contract actions, while damage to property or to persons is covered by tort. *See Northridge Co.,* 471 N.W.2d at 185. Wisconsin cases have enforced this distinction to the point of recasting as breach of contract actions negligence claims seeking economic damages from nonperformance of a contract. *See Hardscrabble Ski Area, Inc. v. First Nat'l Bank,* 42 Wis.2d 334, 166 N.W.2d 191, 197 (1969), *superseded by statute on other grounds as stated in Wright v. Hasley,* 86 Wis.2d 572, 273 N.W.2d 319, 322 (1979); *Schwartz v. Federated Realty Group, Inc.,* 148 Wis.2d 419, 436 N.W.2d 34, 35 (1988).

We can perceive no reason why Wisconsin would deviate from the settled course of its case law if presented with the cause of action for negligent supervision set forth in Midwest Knitting's complaint. Its remedy therefore is, under Wisconsin law, for contract damages. As a breach of contract action, this court would have no jurisdiction over this case. The Tucker Act vests the Claims Court with exclusive jurisdiction over breach of contract claims against the United States seeking more than $10,000. 28 U.S.C. §§ 1346(a), 1491.

9. *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.,* 830 F.2d 1405, 1409 (7th Cir.1987);

Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

*Twin Disc,* 772 F.2d at 1333.