2011 UT App 108

STATE of Utah, Plaintiff and Appellee,

v.

John KRAGH, Defendant and Appellant.

No. 20090693–CA.

Court of Appeals of Utah.

April 7, 2011.

Petition for Writ of Certiorari
Aug. 17, 2011.

Margaret P. Lindsay, Provo, for Appellant.

Mark L. Shurtleff and Christine F. Soltis, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and CHRISTIANSEN.

MEMORANDUM DECISION

McHUGH, Associate Presiding Judge:

¶ 1 John Kragh appeals from the denial of his motion to correct an illegal sentence allegedly imposed after he pleaded no contest to four counts of exploitation of a vulnerable adult[1] arising out of his acquisition and use of credit cards issued in his mother-in-law's (Mother–in–Law) name. *See* Utah Code Ann. § 76–5–111(4)(b)(i) (2008). We dismiss for lack of jurisdiction.

¶ 2 Kragh was originally charged with eight counts of exploitation of a vulnerable adult but agreed to plead guilty to four reduced charges and to pay restitution in exchange for the State's dismissal of the remaining charges and its recommendation that he be sentenced to probation with GPS home monitoring rather than to prison. Before sentencing, counsel for Kragh and the State met with the trial court to determine whether the court would approve the plea agreement. At that time, few details of Kragh's criminal history were presented, other than that he had been incarcerated in the past. The prosecutor explained that Kragh's medical condition required him to see a doctor on a weekly basis, which the prosecutor predicted would result in a request from the "jail ... asking us ... to release him because of the expenditures and that kind of thing." The information presented to the trial court at that time also indicated that only two of the eight credit card companies were seeking restitution for the combined

---

1. A "vulnerable adult means an elder adult, or an adult 18 years of age or older who has a mental or physical impairment which substantially affects that person's ability" to, among other things, "provide personal protection" and necessities, and "carry out the activities of daily living." Utah Code Ann. § 76–5–111(1)(t) (2008).

amount of $19,705.58. Further, although the trial court inquired whether Mother–in–Law's family was in accord with the recommended sentence, the parties did not respond directly to that question.

¶ 3 After considering the information presented, the trial court stated that it was "not willing to tie [its] hands" but indicated that it was "highly likely" it would go along with the State's recommendation. The trial court wondered aloud whether its equivocal response would be of any help to Kragh, explaining that in this case, as in any other, it needed "to see what [Adult Probation and Parole (AP & P)] had to say." The prosecutor then said, "So just for clarification, you aren't willing to bind yourself on Rule 11, but you're saying that unless there's something unforeseen," whereupon the trial court interrupted, stating, "Yeah, right, that I'll go along with the recommendation.... Or if something from the victim's family comes up that I'm not aware of or you're not aware of, we'll go there, but I understand." At that point, defense counsel requested additional time to discuss the matter with Kragh, indicating that she thought he would still sign the plea affidavit because, "as long as everything that we've spoken about today is what is going to come out at sentencing as far as any recommendations and everything that we've spoken of [are] the only things to be considered, then more than likely"; the trial court again interrupted, stating, "I'm going to keep the trial date on."

¶ 4 After consulting with counsel, Kragh agreed to enter no contest pleas to the four reduced charges and executed a written Statement of Defendant in Support of Guilty Plea (Statement). The Statement expressly warned that the trial court was not bound by any sentencing recommendation. In addition, at the hearing to accept Kragh's guilty pleas the trial court explained,

> I've also been informed of a plea agreement, which has been entered into the record, okay? *You need to understand the Court is not a party to that plea agreement.* At sentencing time it will be my decision how you'll be sentenced based on the recommendations I receive, statements made from individuals who may want to speak, but *I'm not a party to that agreement* that you've entered into, okay? *If factors warrant it, I can sentence you to something other than what may have been discussed. Do you understand that?*

(Emphases added.) In response, Kragh said, "Yes." It was only after this exchange that the trial court accepted Kragh's no contest pleas and ordered a presentence report from AP & P.

¶ 5 As the parties had anticipated, the presentence report recommended that Kragh serve a prison term and confirmed that he had previously been imprisoned. It also revealed that Kragh had an extensive criminal record, had stolen property before, had violated parole conditions on several prior occasions, had not fully paid prior restitution orders, and was on supervised probation when he committed the current crimes. In addition, the presentence report set forth the specific amounts of the fraudulent charges on the credit cards Kragh obtained in Mother–in–Law's name, which totaled $122,000 over three years, revealed that Kragh had also used her name to obtain coins from the U.S. Mint, and further indicated that Kragh had signed Mother–in–Law's name to an insurance form claiming that the coins had been stolen. AP & P noted that Mother–in–Law was elderly and easily confused, and that Kragh's actions resulted in her spending her final days in great distress over the demands from creditors and their threats to file liens against her home.

¶ 6 At sentencing, Mother–in–Law's son (Son) testified forcefully about the devastating impact that Kragh's actions had on Mother–in–Law. He also related the efforts by family members to sort out the credit issues, which were ongoing as of the time of sentencing. According to Son, Kragh was exaggerating his medical problems by acting feeble and ill in court. Son reported that Kragh walked "just fine and [swung] his cane like he had no health issues" when he was away from the courthouse. Defense counsel and the prosecutor also spoke at sentencing. While both recommended that the trial court impose the sentence set forth in their agreement, they disagreed about the final restitution amount.

¶ 7 Based on all of the information presented, the trial court determined that incarceration was appropriate and sentenced Kragh to concurrent prison terms of zero to five years on each of the four counts. Although the trial court initially ordered a restitution hearing to resolve the conflict between the State and Kragh, it subsequently ordered restitution of $45,494 based on the stipulation of the parties. Two weeks after sentencing, Kragh filed a motion to correct an illegal sentence under rule 22(e) of the Utah Rules of Criminal Procedure, arguing that the trial court "conditionally bound" itself to the parties' no-prison recommendation. In particular, Kragh asserted that no new information was presented from either the presentence report or Mother–in–Law's family and therefore, the court was bound to either follow the parties' no-prison recommendation or to allow Kragh to "affirm or withdraw" his pleas under rule 11(i)(3) of the Utah Rules of Criminal Procedure.

¶ 8 The trial court denied Kragh's rule 22(e) motion, noting that it had refused to "bind its hands" to the recommendation and that Kragh was informed of this during the plea colloquy and in his written Statement. The trial court then concluded that there was no illegality because it had retained discretion to impose any sentence and the sentences it imposed were within the range authorized by statute. Therefore, the trial court concluded that it lacked jurisdiction to modify the sentences or to allow Kragh to withdraw his pleas. Kragh now appeals, making essentially the same argument he did before the trial court: that his sentence was "imposed in an illegal manner" because the trial court did not allow him to "affirm or withdraw" his pleas under rule 11(i)(3) when it deviated from the parties' no-prison recommendation after having "conditionally bound" itself to it, despite the fact that none of the conditions which qualified the trial court's agreement to be bound to the plea agreement had occurred.[2] In response, the State contends that this court does not have jurisdiction to order that Kragh be permitted to

withdraw his pleas as provided under rule 11, *see* Utah R.Crim. P. 11(i)(3), because rule 22(e) grants jurisdiction only to correct a sentence that is illegal or illegally imposed, *see id.* R. 22(e).

■■■■ ¶ 9 Issues concerning our jurisdiction are questions of law that we must consider at the outset of our review. *See State v. Nicholls,* 2006 UT 76, ¶ 3, 148 P.3d 990 (citing *Beaver Cnty. v. Qwest, Inc.,* 2001 UT 81, ¶ 9, 31 P.3d 1147). Here, Kragh alleges that his sentence was imposed in an illegal manner because it was contrary to the trial court's agreement to be "conditionally bound," and that we have jurisdiction to review the sentence under rule 22(e) of the Utah Rules of Criminal Procedure. Procedural issues present questions of law, which we review for correctness. *See State v. Candedo,* 2010 UT 32, ¶ 7, 232 P.3d 1008; *Nicholls,* 2006 UT 76, ¶ 3, 148 P.3d 990.

¶ 10 Rule 22(e) of the Utah Rules of Criminal Procedure states that a "court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R.Crim. P. 22(e). However, our supreme court held in *State v. Nicholls,* 2006 UT 76, 148 P.3d 990, that appellate review is not available under rule 22(e) when "the substance of the relief sought is the withdrawal of [the defendant's] guilty plea due to the lack of a knowing and voluntary waiver." *Id.* ¶ 5 (holding that review of the defendant's claim that he was suffering from a seriously impaired mental state when he entered his guilty plea was unavailable under rule 22(e)). "Similarly, review is barred when the 'conviction' being challenged is in the form of a guilty plea and the defendant attempts to withdraw that plea using a rule 22(e) challenge." *Id.* (citing *State v. Reyes,* 2002 UT 13, ¶ 3, 40 P.3d 630); *see also Reyes,* 2002 UT 13, ¶ 3, 40 P.3d 630 (dismissing for lack of jurisdiction where the defendant did not move to withdraw his guilty plea that he claimed was not taken in compliance with rule 11 and where the defendant waived his rule 22(e) arguments by not addressing them in briefing or at oral argument).[3] Neverthe-

---

**2.** While Kragh asked for the right to "affirm or withdraw" his pleas, he conceded at oral argu-

ment that he does not wish to affirm the pleas and is instead seeking to withdraw them.

**3.** Kragh did not move to withdraw his pleas

less, Kragh argues that *Nicholls* is distinguishable. According to Kragh, he had a right under rule 11 to withdraw his pleas when the trial court decided to impose a different sentence than that to which the court had "conditionally bound" itself. *See* Utah R.Crim. P. 11(i)(3). Thus, Kragh contends that the trial court imposed his sentence in an illegal manner and therefore, that it can be reviewed under rule 22(e).[4] Because we do not agree that the trial court bound itself to the proposed plea agreement, conditionally or otherwise, we need not consider Kragh's argument that the trial court's failure to comply with rule 11(i)(3) should be treated differently than a claim that a plea entered under rule 11 was not knowing and voluntary. *See Nicholls,* 2006 UT 76, ¶ 5, 148 P.3d 990 (holding that rule 22(e) is an "improper avenue of relief" for the defendant's claim that he was "seriously impaired" at the time he entered his guilty plea).

¶ 11 Rule 11(i)(2) of the Utah Rules of Criminal Procedure allows the parties to disclose their plea agreement to the trial court and provides that "[t]he judge may then indicate to the prosecuting attorney and defense counsel whether the proposed disposition will be approved." Utah R.Crim. P. 11(i)(2). If after approving the proposal, "[t]he judge then decides that the final disposition should not be in conformity with the plea agreement, the judge shall advise the defendant and then call upon the defendant to either affirm or withdraw the plea." *Id.* R. 11(i)(3). Despite Kragh's attempts to couch the trial court's comments as an agreement to be "conditionally bound," the trial court never approved the plea agreement. Instead, the

trial court clearly indicated that it refused to "tie [its] hands." In addition, the trial court elicited Kragh's affirmation that he understood that the court was not a party to the plea agreement and could impose a different sentence than the one recommended in the agreement. Indeed, Kragh's written and signed Statement in support of his pleas acknowledged his understanding that "any charge or sentencing concession or recommendation or probation or suspended sentence, including a reduction of the charges for sentencing, made or sought by either defense counsel or the prosecuting attorney are not binding on the judge." Although the trial court indicated that it would likely go along with the parties' recommendation, it repeatedly communicated that it was not required to do so and that it could deviate from the recommendation in its discretion. "The fact that defendant is disappointed with the sentence imposed does not mean it is improper." *State v. Wanlass,* 953 P.2d 1147, 1149 (Utah Ct.App.1998) (per curiam); *cf. State v. Thurston,* 781 P.2d 1296, 1302 (Utah Ct. App.1989) ("Where a defendant is aware that there is no guarantee the court will agree to follow the prosecutor's recommendation, there is no reason to set aside a guilty plea [as involuntary] if the court did not follow the prosecutor's recommendation, even if the defendant is disappointed with the severity of the sentence.").

¶ 12 Because the trial court never conditionally approved the parties' plea agreement, we reject Kragh's argument that his sentence was imposed in an illegal manner.[5] Consequently, we lack jurisdiction under rule 22(e) to consider Kragh's appeal,[6] *see* Utah

---

before sentencing. *See* Utah Code Ann. § 77–13–6(2)(b) (2008) (requiring that a motion to withdraw a guilty plea must be made before sentence is announced).

4. Kragh does not contend that the trial court exceeded its jurisdiction or that the sentence imposed fell outside the range established by the legislature. *See State v. Yazzie,* 2009 UT 14, ¶ 13, 203 P.3d 984 ("An illegal sentence is one which is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize." (alteration and internal quotation marks omitted)).

5. The State correctly notes that the trial court is never "bound" by approval of a plea agreement. The trial court may deviate from an approved plea agreement at will but must "advise the defendant [of its decision to enter a different sentence] and then call upon the defendant to either affirm or withdraw the plea." Utah R.Crim. P. 11(i)(3).

6. Kragh's remaining avenue of relief is under the Post–Conviction Remedies Act and rule 65C of the Utah Rules of Civil Procedure. *See* Utah Code Ann. §§ 78B–9–101 to –405 (2008 & Supp. 2010); Utah R. Civ. P. 65C.

R.Crim. P. 22(e), and dismiss for lack of jurisdiction.

¶ 13 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.