2021 UT App 98

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF Z.C.W. AND C.C.W.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

R.D.,
Appellant,
*v.*
C.L.W.,
Appellee.

Opinion
No. 20200039-CA
Filed September 23, 2021

Third District Juvenile Court, West Jordan Department
The Honorable Renee M. Jimenez
No. 1135445

Julie J. Nelson and Alexandra Mareschal,
Attorneys for Appellant

Lisa Lokken and Kirstin H. Norman, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

HARRIS, Judge:

¶1 This termination-of-parental-rights case—in which R.D. (Mother) seeks to terminate the parental rights of her ex-husband, C.L.W. (Father), regarding their two children, C.C.W. and Z.C.W. (collectively, Children)—comes to us for a second time. In our previous opinion, we reversed the juvenile court's order dismissing Mother's petition and remanded the case with

instructions for the court to redo its "best-interest" analysis, this time taking into account evidence that it had previously discounted regarding Father's history of domestic violence toward Mother and another woman. *See In re C.C.W.*, 2019 UT App 34, ¶¶ 19–25, 440 P.3d 749. On remand, the juvenile court reconsidered best interest and this time took into account Father's history of domestic violence, but it conducted its analysis as of early 2017—the time of the previous trial—and not as of late 2019, when the post-remand proceedings took place. The court denied Mother's motion to amend her termination petition to include new facts and circumstances that she asserted had occurred after the earlier trial, and the court refused to consider any evidence regarding best interest that had not been placed into the record at the previous trial. After reevaluating best interest as of 2017, this time not compartmentalizing Father's history of domestic violence, the court again concluded that termination of Father's parental rights was not in Children's best interest, and again dismissed Mother's petition.

¶2 Mother appeals the dismissal of her petition, but does not raise a substantive challenge to the juvenile court's new findings and conclusions—that is, Mother does not claim that the findings are unsupported by the evidence presented at the 2017 trial. Instead, Mother's challenge is procedural: she asserts that the court erred by conducting its post-remand best-interest analysis in light of the evidence available in 2017, and by refusing to consider facts and circumstances arising after 2017 that might have affected its analysis. We agree with Mother, and hold that when we remand a case for a court to reconsider the best-interest question, we generally intend for that renewed inquiry to be conducted in the present tense, and for the effective date of that analysis to be the date of the post-remand proceeding. Accordingly, we vacate the juvenile court's order of dismissal, and remand for a new best-interest analysis that should be conducted based on the facts and circumstances in existence as of the date the inquiry is made.

BACKGROUND

¶3      Many of the salient facts that inform the legal issues in this case are set forth in detail in our previous opinion, *see id.* ¶¶ 2–12, and we see no need to repeat them here. For present purposes, we include only a brief summary of the pre-remand facts.

¶4      Mother filed a private petition seeking termination of Father's parental rights regarding Children and alleged, among other things, that Father had a history of domestic violence toward her and another woman and had been incarcerated twice for such offenses. *Id.* ¶¶ 2–5. After a trial in early 2017, the juvenile court found that Father had abandoned Children, and that there were therefore statutory grounds for termination, *id.* ¶ 7, but concluded that it was not in Children's best interest for Father's parental rights to be terminated, *id.* ¶¶ 9–12. The court made factual findings that Father had indeed brutally attacked Mother and had a history of domestic violence, *id.* ¶ 8 & n.1, but nevertheless concluded that those facts had little bearing on the termination inquiry, because Father had never been violent toward Children, *id.* ¶ 8. After determining that Mother had not carried her burden on the best-interest inquiry, the juvenile court dismissed Mother's petition, and Mother appealed. *Id.* ¶¶ 12–13.

¶5      On appeal, we concluded that the juvenile court's best-interest "analysis was materially flawed" because, rather than evaluating the impact Father's acts of domestic violence could have on Children, the court "completely separate[d] or compartmentalize[d]" Father's "history of domestic violence toward other adults from the best-interest inquiry." *Id.* ¶¶ 15, 19, 22. Accordingly, we vacated the order dismissing Mother's petition and remanded for the juvenile court to "reconsider[]" its best-interest inquiry. *Id.* ¶ 25. We directed the court, in conducting its renewed inquiry, to "adequately consider[] all of

the proper factors," including "what effect, if any, Father's history of domestic violence might have on his efforts to reestablish a relationship with the Children." *Id.*

¶6 Soon after remand, Mother filed a motion seeking leave to amend her petition to include additional relevant information. Mother asserted that "significant events, developments and incidents" bearing on Children's best interest had occurred in the two years since the 2017 trial. Among other things, Mother alleged that, since the trial, Father had committed violent acts against another woman, and that Father's parole had been revoked due to drug and alcohol use. In addition, Mother asserted that her own situation had changed, alleging that she had remarried and her new spouse now wanted to adopt Children. The guardian ad litem (GAL) assigned to represent Children endorsed Mother's position. Nevertheless, the juvenile court denied Mother's motion to amend, explaining that it interpreted our opinion as requiring only a "reconsideration" of its previous ruling. The court declined to consider the new material alleged by Mother in connection with its renewed best-interest analysis, stating that it would "listen to the testimony" presented at the 2017 trial and would "read and consider the various literature cited" in our opinion, after which it would issue a written ruling without further hearing.

¶7 A few weeks later, the juvenile court issued a written decision setting forth its renewed best-interest analysis. This time, the court did consider Father's history of domestic violence. The court again noted that there was no evidence that Father had ever "physically abused his biological or stepchildren," and found that "Mother did not fear Father's interaction with the Children." The court also observed that, under the district court order then in effect governing the parties' divorce proceedings, Father was entitled only to supervised parent-time with Children. The juvenile court concluded that Father was at low risk to commit domestic

violence in the presence of Children, and gave several reasons for its conclusion: Father had little contact with Mother; Father had "engaged in mental health services and medication management" and had "developed coping skills"; Father was "remorseful" and "desire[d] to correct his past actions"; and Father "was married with a support system in place." In the court's view, this evidence demonstrated that Father had taken "meaningful steps to change his life in order to be reintroduced" to Children. The court also noted that Father was Children's only "African American father figure," and that by keeping Father's parental rights intact, Children could "maintain their legal relationship" with Father's extended family, including their older half-sister. For these reasons, the court concluded—based on reconsideration of the evidence presented at the 2017 trial— that Mother had not carried her burden of demonstrating, by clear and convincing evidence, that it would be in Children's best interest for Father's parental rights to be terminated. On that basis, the court again dismissed Mother's petition, doing so without considering any evidence regarding events that allegedly occurred between the 2017 trial and the date of the court's order.

¶8　Soon after issuance of the juvenile court's post-remand ruling, Mother and the GAL each asked the court for a "new trial," contending that the court should "re-open the evidence" because it was "impossible for the court" to properly consider best interest "without considering evidence of events that have occurred in the two and a half years since the trial." In the documentation supporting her motion, Mother provided additional detail regarding some of the new evidence, asserting that Children's half-sister had reached adulthood, no longer lived with Father, and had her own independent relationship with Children; that Father had reduced his financial support of Children and let their insurance coverage lapse; and that C.C.W.

had recently been diagnosed with attention deficit hyperactivity disorder, allegedly heightening the need for stability in his life.[1] The court denied these motions, offering its view that it had complied with this court's instructions by "considering all of the evidence presented" at the 2017 trial, and that Mother's remedy was either to appeal or to file a new petition for termination of Father's parental rights.

ISSUE AND STANDARD OF REVIEW

¶9     Mother appeals from the juvenile court's second dismissal of her termination petition, and raises one issue for our review: whether the juvenile court erred when it conducted its post-remand best-interest inquiry in past-tense fashion, as of 2017, and refused to consider facts and circumstances that allegedly occurred after 2017.[2] Both Mother and Father contend that we

---

1. On appeal, Mother asserts that, in recent months and since the juvenile court's 2019 order on reconsideration, Father has been charged with new domestic violence crimes against his current wife. It should go without saying that evidence of such events does not exist in the record before us. But such allegations underscore the necessity, discussed herein, for post-remand best-interest inquiries to be conducted in present-tense fashion, taking into account the facts and circumstances as they are found to exist at the time the analysis is undertaken.

2. The GAL filed a brief attempting to raise additional issues, including a substantive challenge to the juvenile court's findings and conclusions. But because we find Mother's procedural argument persuasive, and remand for another renewed best-interest analysis, we deem it unnecessary to reach any substantive challenge to the juvenile court's findings until those findings have been arrived at in a procedurally appropriate

(continued…)

should review this issue for abuse of discretion. We disagree. The narrow question of whether a post-remand best-interest inquiry should be conducted in past-tense or present-tense fashion presents a procedural legal issue, not a factual issue, and one that we review for correctness.[3] *See Berman v. Yarbrough*, 2011 UT 79, ¶ 12, 267 P.3d 905 ("We review procedural issues for correctness and afford no deference to the lower court's ruling."); *see also State v. Kragh*, 2011 UT App 108, ¶ 9, 255 P.3d 685 ("Procedural issues present questions of law, which we review for correctness."). The question also involves interpretation of the remand instructions contained in our previous opinion, and no other court is better positioned on that score than we are. *See State v. Lopes*, 2001 UT 85, ¶¶ 11, 17–19, 34 P.3d 762 (stating that "the issues before us involve legal

---

(…continued)

manner. Moreover, we wonder whether the GAL—who is here aligned with the appellant, a somewhat unusual posture for the GAL in juvenile appeals—is properly allowed to inject new issues into this appeal without filing an independent notice of appeal, and whether the GAL's brief (filed near in time to Father's, rather than Mother's) was timely filed; the absence of briefing on these questions provides us a second reason to defer any ruling on the GAL's substantive challenge to the juvenile court's findings.

3. Even to the extent that this issue arose in the context of a motion for new trial, which normally "invokes the sound discretion of the trial court," *see ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 21, 309 P.3d 201 (quotation simplified), where a court's "decision rests on an erroneous legal determination," such as the misapplication of a legal standard, that court has necessarily abused its discretion, *see Maak v. IHC Health Services, Inc.*, 2016 UT App 73, ¶ 26, 372 P.3d 64; *see also Gardner v. Gardner*, 2019 UT 61, ¶ 18, 452 P.3d 1134.

determinations" that are reviewed "for correctness," including the "crucial question" of "what we meant when we remanded the case for a new trial" (quotation simplified)). Accordingly, we review the juvenile court's post-remand procedural decisions for correctness.

ANALYSIS

¶10 "[T]he Utah Constitution recognizes and protects the inherent and retained right of a parent to maintain parental ties to his or her child." *In re J.P.*, 648 P.2d 1364, 1377 (Utah 1982). Indeed, our legislature has "declared that 'a parent possesses a fundamental liberty interest in the care, custody, and management of the parent's child.'" *In re B.T.B.*, 2020 UT 60, ¶ 24, 472 P.3d 827 (quoting Utah Code Ann. § 78A-6-503(1) (LexisNexis 2017), now recodified at *id.* § 80-4-104(1) (Supp. 2021)). Before severing this important parent-child bond, a court must ensure that the party seeking to terminate a parent's rights has made a two-part showing by clear and convincing evidence. *See In re F.B.*, 2012 UT App 36, ¶ 2, 271 P.3d 824 (per curiam); *see also In re B.T.B.*, 2020 UT 60, ¶¶ 44–54. First, the court must find grounds for termination under applicable statutory law. *See In re F.B.*, 2012 UT App 36, ¶ 2; *see also* Utah Code Ann. § 80-4-301 (LexisNexis Supp. 2021).[4] Second, the court "must find that termination of the parent's rights is in the best interest[] of the child." *In re F.B.*, 2012 UT App 36, ¶ 2; *see also* Utah Code Ann. § 80-4-104(12)(a) (stating that the "best interest of the child" is

---

4. Since the juvenile court's post-remand ruling, many sections of the Utah Code that pertain to juveniles have been recodified and renumbered. In this opinion we cite the current code sections for convenience, at least with regard to code sections that have not been materially altered.

"of paramount importance in determining whether termination of parental rights shall be ordered").

¶11    We have explained that the best-interest inquiry "requires courts to examine all of the relevant facts and circumstances surrounding the child's situation." *In re C.C.W.*, 2019 UT App 34, ¶ 18, 440 P.3d 749 (quotation simplified). "This analysis should be undertaken from the child's point of view, not the parent's." *In re B.T.B.*, 2020 UT 60, ¶¶ 63, 64 (quotation simplified). A child's best interest can be determined only by considering "the physical, mental, or emotional condition and needs of the child." *In re T.E.*, 2011 UT 51, ¶ 41, 266 P.3d 739 (quoting Utah Code Ann. § 78A-6-509 (LexisNexis Supp. 2011), now recodified at *id.* § 80-4-303 (Supp. 2021)). "[A]ny evidence that is probative of what is in the child's best interest" may be considered. *Id.* In sum, the best-interest inquiry is "wide-ranging" and "asks a court to weigh the entirety of circumstances . . . to determine what is in the best interest of the child under all of the circumstances," *In re J.M.*, 2020 UT App 52, ¶ 35, 463 P.3d 66, with the court's focus being "firmly fixed on finding the outcome that best secures the child's well-being," *In re B.T.B.*, 2020 UT 60, ¶ 64. A court may not, simply due to concerns about judicial economy, limit the scope of the best-interest inquiry. *See In re J.J.T.*, 877 P.2d 161, 164 (Utah Ct. App. 1994) (stating that, when considering "the best interest[] of a child, a court must be free from the imposition of artificial constraints that serve merely to advance the cause of judicial economy").

¶12    In the context of evaluating the termination of a parent's rights, we have stressed that "[c]onsiderations regarding a child's welfare are rarely, if ever, static," and that often "the child's environment is constantly evolving." *Id.* at 163; *see also In re H.J.*, 1999 UT App 238, ¶ 45, 986 P.2d 115 (stating that a child's "needs and circumstances can, and do, change rapidly," and in many cases "the passage of time itself can result in substantially different circumstances" for a child). For these reasons, the best-

interest inquiry is generally to be conducted in present-tense fashion, with the effective date of the inquiry being the date of the hearing, trial, or other judicial determination. In a best-interest inquiry, the relevant question is almost always this one: what outcome is in the child's best interest *now*?

¶13 This conclusion is bolstered by the language of the current governing statute. Although this particular language was not in effect at the time the juvenile court entered its post-remand findings, our legislature in 2020 added the following language—as immaterially amended in 2021—to the relevant statute:

> In determining whether termination *is* in the best interest of the child, and in finding that termination of parental rights, from the child's point of view, is strictly necessary, the juvenile court shall consider [certain factors, including reunification efforts and kinship placement possibilities].

Utah Code Ann. § 80-4-104(12)(b) (emphasis added). This statutory language uses the verb "is," indicating that the best-interest inquiry is to be undertaken in a present-tense fashion. *See Scott v. Scott*, 2017 UT 66, ¶ 24, 423 P.3d 1275 ("Typically, we understand 'is' as a present tense . . . verb . . . . Accordingly, we assume that the legislature used 'is' here as a present-tense verb." (quotation simplified)); *see also W.N. v. S.M.*, 424 P.3d 483, 490 (Haw. 2018) (concluding that a lower court erred, post-remand, by conducting its custody analysis in past-tense fashion as of the date of the previous trial, and emphasizing that the governing statute's present-tense locution "requires the court to consider if the person 'is fit and proper' to care for the minor child *at the time of the contemplated custody award*").

¶14 In situations where we have remanded a case for a trial court to redo its best-interest analysis, we have sometimes given explicit instructions for courts to do so in present-tense fashion. *See, e.g., In re H.F.*, 2019 UT App 204, ¶ 18 n.6, 455 P.3d 1098

(remanding for a new best-interest analysis, and stating that "any number of circumstances may have changed since trial, and the court should take such changes into account in reconsidering its decision"); *Ross v. Ross*, 2019 UT App 104, ¶ 20, 447 P.3d 104 (remanding for renewed consideration of a parent's relocation, including whether such relocation was in the child's best interest, and stating that, in reconsidering the relocation question, the court "should consider the present circumstances of the parties and the Children and not simply re-litigate the issues as they were at the time of the now-vacated custody order"). In this case, unfortunately, our remand instructions were not quite as explicit. We concluded that "the juvenile court's best-interest determination was materially flawed," vacated the court's order on that basis, and remanded "for proceedings consistent with this opinion," stating that the court should "reconsider[]" the best-interest question. *See In re C.C.W.*, 2019 UT App 34, ¶ 25. We did not directly instruct the court to undertake that "reconsideration" in a present-tense fashion. In hindsight, we wish we had been more explicit. But our intent was that the court would redo its entire best-interest analysis, this time taking into account the domestic violence evidence, and that it should undertake that analysis in present-tense fashion, evaluating best interest as of the time of the post-remand proceedings. We take this opportunity to clarify that, unless we direct otherwise in a particular case, courts should assume that we intend for post-remand best-interest analyses to be undertaken in a present-tense manner.

¶15 Post-remand application of a present-tense analysis will not, however, always require a new evidentiary hearing. It may be that, in certain cases, the situation will not have changed at all, and the parties will not have any new evidence to present; in such a situation, given the absence of any new evidence, a present-tense and past-tense analysis will not differ. In other situations, a court may examine the proffered new evidence and conclude that, even assuming the veracity of the new allegations,

the court's analysis would remain unchanged; such analysis is, in its own way, a present-tense analysis, even though no new hearing will be necessary. *Cf. In re G.D.*, 2021 UT 19, ¶¶ 80–82, 491 P.3d 867 (concluding that a lower court appropriately dealt with proffered new evidence in a termination case when it concluded that "none of the [new] evidence would have altered the court's [previous] decision" (quotation simplified)). In still other situations, the parties may agree that the new allegations, even if material, are not disputed; in those cases, a court would be within its discretion to undertake its present-tense analysis, including consideration of the new undisputed evidence, without holding a new evidentiary hearing. And in many other situations, one or both of the parties may wish to offer new material disputed evidence; in those cases, a court conducting a post-remand best-interest analysis will likely need to hold an evidentiary hearing and make findings regarding the veracity and the materiality of the new allegations, and will need to consider whether additional discovery or other pre-hearing proceedings would be appropriate. *See, e.g.*, *W.N.*, 424 P.3d at 491 (determining that a lower court erred, post-remand, when it failed to hold an evidentiary hearing to consider new disputed factual allegations that "would have directly pertained" to the issue at hand). But regardless of the posture of the particular case, a court conducting a proper post-remand best-interest analysis must—in some manner—consider and appropriately deal with proffered new evidence.

¶16    With these principles in mind, we now examine the juvenile court's handling of Mother's proffered new evidence in this case. As noted above, the court refused to allow Mother to amend her petition to include new allegations, and after issuing its post-remand ruling it denied Mother's motion for "new trial" in which Mother again asked the court to consider the new

allegations.[5] The court espoused a narrow interpretation of the remand instructions in our previous opinion, and opted to conduct a "reconsideration" of the evidence that had been presented at the 2017 trial, without any consideration of the new evidence Mother proffered. And the court instructed Mother that the proper avenue to facilitate adjudication of the new allegations was to file an entirely new petition for termination of Father's parental rights.

¶17    The juvenile court erred by undertaking its best-interest analysis as of 2017, the date of the previous trial. As discussed above, the court should have undertaken its best-interest analysis in present-tense fashion, as of 2019, the date of the post-remand proceeding. And the court erred by refusing to consider, in some form, the new evidence proffered by Mother. The court made no determination that the proffered evidence was

---

5. On appeal, both Mother and Father spend a significant amount of energy debating the applicability of rule 59 of the Utah Rules of Civil Procedure and section 78A-6-1108 of the Utah Code. *See* Utah R. Civ. P. 59 (providing the grounds and procedures for requesting a new trial); Utah Code Ann. § 78A-6-1108(2) (LexisNexis Supp. 2021) ("If it appears to the court that there is new evidence that might affect the court's decree, the court shall order a new hearing, enter a decree, and make any disposition of the case warranted by all the facts and circumstances and the best interests of the minor."). We need not wade further into that debate here, given that the court should have considered—in some fashion—the new evidence Mother proffered, even *before* entering its post-remand findings and conclusions. In other situations, however, rule 59 and section 1108 may certainly have a role to play in the event that new evidence comes to light after issuance of a final order or decree.

immaterial or inadmissible;[6] we offer our own observation that at least some of the proffered evidence—in particular, the allegation that Father has committed additional acts of domestic violence against additional women—if true, appears to be at least potentially material and at odds with some of the court's post-remand findings. And the court made no effort to ascertain the extent to which the new evidence was disputed. The court needed to consider the new evidence in some fashion, rather than simply relying on previously submitted evidence.

¶18 Mother could, of course, alternatively file a new termination petition. In such a proceeding, Mother could air all of the new allegations, and would not be barred by res judicata from incorporating into her presentation facts found by the court during the previous proceedings. *See In re A.C.M.*, 2009 UT 30, ¶ 18, 221 P.3d 185 ("We . . . adopt the rule . . . that in child welfare proceedings res judicata does not bar courts from considering both newly discovered facts, whether or not they were knowable at the time of the earlier proceeding, and facts determined in previous termination proceedings when considering a later termination petition."); *see also Hardy v. Hardy*, 776 P.2d 917, 922–23 (Utah Ct. App. 1989) (stating that res judicata does not preclude reconsideration of previously admitted evidence because res judicata, in this context, is "subservient to the child's best interest[]"). But filing a new termination petition would entail some inefficiencies; as Mother

---

6. On appeal, Father asserts that the juvenile court must have determined, sub silentio, that the allegations proffered by Mother would not have made any difference to its analysis, even if true. We do not read the court's orders the same way. As we interpret them, the court did not reach that analytical step at all, because it undertook a past-tense (rather than a present-tense) analysis. And in any event, as noted, in our view at least some of Mother's proffered evidence is at least potentially probative.

pointed out at oral argument before this court, if a new petition were filed the juvenile court would be required to start from scratch, and re-adjudicate the entire case, including the "statutory grounds" portion that is no longer in dispute here. Moreover, the mere fact that Mother has the option of filing another action does not mean that her preferred option is thereby foreclosed. When two valid procedural litigation options exist, it is up to the litigant to choose which one to utilize. *See, e.g., Utah Stream Access Coal. v. VR Acquisitions, LLC*, 2019 UT 7, ¶ 36, 439 P.3d 593 ("[A] core component of our adversary system [is] the notion that the plaintiff is the master of the complaint. We leave it to the parties to plead claims and defenses in the time and manner designated by our rules."). A court may not close one door simply because another one exists, even if the court considers the litigant's preferred option inefficient. *See In re J.J.T.*, 877 P.2d 161, 164 (Utah Ct. App. 1994) (stating that, when considering "the best interest[] of a child, a court must be free from the imposition of artificial constraints that serve merely to advance the cause of judicial economy"); *cf. AFA Distrib. Co. v. Pearl Brewing Co.*, 470 F.2d 1210, 1213 (4th Cir. 1973) (stating that federal courts asked to exercise diversity jurisdiction "cannot close the door to the federal courts merely because [a diversity] case involves a difficult question of state law").

CONCLUSION

¶19 The juvenile court erred by conducting a past-tense— rather than a present-tense—analysis while reconsidering best interest during its post-remand proceedings. The best-interest inquiry is, in most cases, not to be based on a snapshot from the past. Rather, a proper best-interest inquiry requires evaluating all relevant past and present circumstances bearing on a child's welfare as of the date of the proceeding. Where an appellate court remands a case for a trial court to redo its best-interest analysis, that analysis should generally be conducted as of the

date of the post-remand proceedings, and the court must consider, in some fashion, any new evidence proffered by the parties.

¶20 Accordingly, we vacate the juvenile court's order dismissing Mother's petition, and we again remand for the juvenile court to redo its best-interest analysis, this time doing so in a present-tense fashion, and not as of 2017 or as of 2019. We once again express no opinion on the substance of the best-interest question, and emphasize that our opinion should not be construed as urging one outcome or another on remand.

———————